IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TROY WILLIAM THOMPSON, | NO. C 04-03722 JW |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND PETITIONER'S MOTION FOR EVIDENTIARY HEARING AND DISCOVERY** |
| DAVID RUNNELS, Warden, | |
| Respondent. | |

## I. INTRODUCTION

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging his conviction for residential burglary, receiving stolen property, and possession of methamphetamine for sale. The Court found that the following claims state cognizable bases for habeas relief under § 2254: (1) he was denied his rights under the United States Constitution to due process and equal protection of the law, a jury trial, a public trial, and the assistance of counsel, as well as his rights under state law, by the court's impaneling of an anonymous jury without any evidence or finding of necessity; (2) he was denied effective assistance of counsel if his counsel agreed to an anonymous jury process; (3) he was denied his right under the due process and equal protection clauses of the United States Constitution to an adequate record on appeal and to a fair appeal because he was deprived of the names and addresses of the jurors; (4) he was denied his right to effective assistance of counsel when counsel failed to move to suppress certain evidence seized during a search of his car; (5) he was denied his

right to effective assistance of counsel when counsel failed to move to suppress photographs printed from film found in his car; and (6) he was denied his right to effective assistance of counsel when his counsel failed to oppose consolidation of informations. The Court issued an order to show cause why a writ should not issue, and Respondent filed a timely answer. Petitioner then filed a traverse. Petitioner also filed a motion for an evidentiary hearing. For the reasons set forth below, the Court denies the petition for a writ of habeas corpus and denies the motion for an evidentiary hearing.

II. BACKGROUND

A.      Factual Background[1]

Evidence was introduced concerning two prior 1995 burglaries as relevant to the issues of intent and motive. In the 1995 burglaries, Petitioner entered the homes of two single women, Jean Ward and Julian Anshutz, in his neighborhood in Santa Rosa. Petitioner took telephone equipment, dirty lingerie from the laundry hamper, cameras, personal photographs of the victims and their female relatives and friends, jewelry, and other small items. Petitioner, however, did not take the bigger items such as the TV, VCR, and stereo.

On July 28 of 1999, someone broke into Denise Gingrich's apartment in Rohnert Park, and stole her Magnavox VCR, Westinghouse CD player, TV remote, and other items including cell phone parts, lingerie, camera, personal photographs, jewelry, and other small items. Rohnert Park is approximately eight miles from Santa Rosa. On the same day, two police officers encountered Petitioner while he was parked in his car near Gingrich's apartment. The two police officers, Officer Moore and Officer Marquez, remembered seeing various items in the car including a Magnavox VCR and a CD player, and pictures of various women that were cut out from the background. The police officers did not know about the Gingrich burglary, however, and Petitioner was permitted to leave.

Approximately a month and a half later, police arrested Petitioner on September 13 on charges of possession of methamphetamine for sale and possession of burglar's tools. Inside Petitioner's car at

---

[1]The pertinent facts are adopted from the unpublished opinion of the California Court of Appeal (People v. Thompson, A091082), Petitioner's Petition, Respondents Answer, Exhibit 8.

2

the time of his arrest was a large amount of methamphetamine (19 one-gram bags), some of which was in a fanny pack in his lap, and some of which was in his clothing.  Also inside the car was a backpack containing what appeared to be burglar's tools, and numerous other items such as women's lingerie and cut out photographs of women.  The arresting officer testified that he did not search the car any further because he had all the evidence he needed.

Shortly after Petitioner's arrest, he sold the car to a female friend for $50 dollars a week, though Petitioner claimed it was a conditional sale and the condition was never met.  The female friend had the car for a couple of days before she loaned it to a Joseph Rodriguez.  Rodriguez never returned the car.  Rodriguez invoked the 5th Amendment at trial and refused to testify.

On September 26, highway patrol found the car on Highway 101.  Another two weeks later on October 14, police located the car in a lot in Marin County, and obtained a search warrant to search the car.  Gingrich was summoned by the police to identify items found in the car, and Gingrich was able to identify numerous items that belonged to her including lingerie, photos, and some undeveloped film.

Petitioner was initially charged with the crimes of possession of methamphetamine for sale, transportation of methamphetamine, and the misdemeanor of possession of burglar's tools.  Several weeks later, after the discovery and search of the car, the district attorney filed another complaint charging Petitioner with committing the Gingrich burglary and receiving stolen property.  Three strikes prior and three prior serious felony enhancements were included.

On December 7, Petitioner moved to continue the trial of the methamphetamine and burglar's tools charges in the first information, claiming he needed more time to locate and evaluate a potential defense witness, Melissa Bowden.  In the motion for continuance, defense counsel indicated that he would stipulate and agree to a consolidation of all the pending charges against Petitioner, in view of the overlapping evidence between the two cases.

The two informations were consolidated, by stipulation, on December 10.  Bowden and another witness, Camille Christensen, were able to explain the lingerie and burglar's tools that were

3

found in Petitioner's car at the time of his arrest. The lingerie apparently belonged to Bowden, and the tools belonged to Christensen.

During jury voir dire, the trial court informed the jurors that they will remain anonymous as a matter of law, although a copy of the jurors' names was provided to counsel. The relevant discussion was as follows:

> THE COURT: I just want your juror number at this point.
>
> PROSPECTIVE JUROR: 854 – or, yes.
>
> THE COURT: And, again, everybody look down at your jury badge and memorize your number because that's how we refer to you here in California. You're entitled to anonymity as a matter of law. That's why I keep asking for your juror number.
>
> THE COURT: Now, throughout these proceedings, as I indicated before, you will be called by your jury number. And you are entitled to anonymity as a matter of law, so your name, as well as your address and any other information about you, is sealed at the end of the trial. Referring to you by number is impersonal, and I apologize for it at the outset. It is the law of California, so please don't take offense at that, because no offense is intended.

B. <u>Procedural History</u>

The petition alleges that Petitioner was convicted by a jury in Sonoma County of residential burglary, receiving stolen property, and possession of methamphetamine for sale. On April 20, 2000, Petitioner was sentenced to sixty-seven years and eight months to life in prison. Petitioner filed a direct appeal. The state appellate court affirmed Petitioner's conviction, except it reversed one of the enhancements for a prior conviction. The state supreme court denied review on March 20, 2002. Petitioner also filed state habeas petitions, none of which were granted.

Petitioner filed the instant federal habeas petition on September 3, 2004. The Court issued an order to show cause on February 10, 2005. Respondent filed an answer addressing the merits of the petition and Petitioner filed a traverse. In addition, Petitioner filed a motion for evidentiary hearing and discovery, and Respondent filed an opposition to the motion.

## III. STANDARDS

Petitioner filed his petition for writ of habeas corpus in this Court on September 3, 2004. Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

4

("AEDPA").  This Court may grant a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is being held in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the AEDPA, a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.  The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with reasonableness." Lockyer v. Andrade, 123 S. Ct. 1166, 1175 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light

5

of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Court must presume correct any determination of a factual issue made by a state court unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The petitioner has the burden to prove by a preponderance of the evidence that his custody is in violation of the Constitution, laws or treaties of the United States under 28 U.S.C. § 2254(a). Silva v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002).

## IV.  DISCUSSION

Petitioner raises six claims under Section 2254: (1) he was denied his rights under the United States Constitution to due process and equal protection of the law, a jury trial, a public trial, and the assistance of counsel, as well as his rights under state law, by the court's impaneling of an anonymous jury without any evidence or finding of necessity; (2) he was denied effective assistance of counsel if his counsel agreed to an anonymous jury process; (3) he was denied his right under the due process and equal protection clauses of the United States Constitution to an adequate record on appeal and to a fair appeal because he was deprived of the names and addresses of the jurors; (4) he was denied his right to effective assistance of counsel when counsel failed to move to suppress certain evidence seized during a search of his car; (5) he was denied his right to effective assistance of counsel when counsel failed to move to suppress photographs printed from film found in his car; and (6) he was denied his right to effective assistance of counsel when his counsel failed to oppose consolidation of informations. The six claims can be grouped into essentially three claims: (1) use of the anonymous jury proceeding; (2) the denial of transcripts of the anonymous jury proceeding; and (3) ineffective assistance of counsel.

A.   Anonymous Jury Proceeding

Petitioner claims the state court erroneously implemented an "anonymous" jury proceeding when the court, without making a finding of necessity, instructed the jury that they will be referred to only by their juror numbers. Respondent, however, asserts that the jury proceeding was not "anonymous" because counsel were provided with a list of the jurors' names. Furthermore,

6

1  Respondent argues that even if the jury proceeding was "anonymous," it was not prejudicial.

2  In Goodwin, the court held that the jury selection procedure, which included referring to jurors
3  only by assigned juror identification numbers rather than by their names, was consistent with Code
4  Civ. Proc., § 237 and did not deny defendant his constitutional right to a public jury trial. People v.
5  Goodwin, 59 Cal.App.4th 1084, 1087 (1997).  The Goodwin court reasoned that, contrary to the
6  petitioner's assumption, the jury was not "anonymous" as the state court and counsel had available to
7  them a document identifying the jurors by name. Goodwin, 59 Cal.App.4th at 1087.  Moreover, the
8  petitioner in Goodwin did not allege any preclusion of appropriate biographical or personal juror
9  information during voir dire. Id. at 1092.  Finally, in Goodwin, the petitioner's right to a public trial
10 was not denied, because the trial was open to the public at all times. Id. at 1092-1093.

11 In the instant case, the state court and counsel also had available to them a document
12 identifying the jurors by name.  Additionally, Petitioner has not alleged any preclusion of appropriate
13 biographical or personal juror information during voir dire.  Finally, like Goodwin, the record does
14 not indicate that Petitioner's trial was closed to the general public.  In short, Petitioner's assertion that
15 the jury proceeding was "anonymous" is without merit under state law.

16 Nevertheless, Petitioner contends that even if the jury proceeding was not truly "anonymous,"
17 the jury proceeding was unconstitutional because: (1) the jurors' belief that they were anonymous
18 burdened his Constitutional right to a presumption of innocence; and (2) he did not personally see the
19 list of jurors' names.

20  1.  Fair Trial and the Presumption of Innocence

21 Petitioner relies upon Waller v. Georgia, 467 U.S. 38 (1984) and Press-Enterprise v. Superior
22 Court, 464 U.S. 501 (1984), in claiming that the "anonymous" jury proceeding deprived Petitioner of a
23 fair trial.  Also, Petitioner relies upon the general principles set forth in Estelle v. Williams, 425 U.S.
24 501 (1975), and U.S. v. Shyrock, 342 F.3d 948 (9th Cir. 2003), in his contention that the "anonymous"
25 jury proceeding burdened Petitioner's presumption of innocence.  The United States Supreme Court
26 has held that the right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.

7

1  Estelle, 425 U.S. at 503. The Estelle court further held that the presumption of innocence is a basic
2  component of a fair trial. Id. Courts that have considered the issue of whether the use of an
3  anonymous jury burdened the presumption of innocence, usually weigh the government's interest in
4  safeguarding jurors against the defendant's interest in avoiding erosion of the presumption of
5  innocence. For example, the Ninth Circuit Court of Appeal in U.S. v. Shyrock, 342 F.3d 948, 971 (9th
6  Cir. 2003), recognized that "empaneling an anonymous jury is an unusual measure that is warranted
7  only where there is a strong reason to believe the jury needs protection or to safeguard the integrity of
8  the justice system, so that the jury can perform its factfinding function." Shyrock, 342 F.3d at 971.
9  The Shyrock court held that the trial court may empanel an anonymous jury "where (1) there is a strong
10 reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to
11 ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize the
12 risk of infringement upon the fundamental rights of the accused." Id.

13      Nevertheless, Petitioner has not established by a preponderance of the evidence that his
14 custody is in violation of the Constitution, laws or treaties of the United States under 28 U.S.C. §
15 2254(a). Contrary to Petitioner's assertion, Waller and Press-Enterprise do not stand for the
16 proposition that a criminal defendant is deprived of a fair trial when the jurors believe they are
17 anonymous and/or unaccountable. Instead, those cases focus on the right to a public trial guaranteed
18 by the Sixth Amendment. Petitioner does not contend that he was denied a public trial. Moreover, the
19 record does not indicate that the trial was closed to the public.

20      As for Petitioner's burden on the presumption of innocence claim, nothing in the record
21 indicates that the jurors suspected Petitioner as a dangerous felon. On the contrary, the record
22 indicates that the state court informed the jury that they were to be referred to by their juror numbers
23 solely because the law required it. Furthermore, there is no suggestion that counsel had any concerns
24 about the jury procedure, including any indications that the prospective jurors were uncomfortable
25 with being identified solely by numbers.

26      As for Petitioner's reliance on Shyrock, the case does not justify habeas relief because it is not
27
28                                                         8

**United States District Court**
For the Northern District of California

1 United States Supreme Court precedent; the <u>Shyrock</u> case was decided by the Ninth Circuit. The Court
2 may not grant a petition with respect to any claim that was adjudicated on the merits in state court
3 unless the state court's decision is "substantially different from the relevant" Supreme Court precedent.
4 <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000). If there is no relevant Supreme Court precedent a
5 state court decision cannot be contrary to or an unreasonable application of clearly established federal
6 law. <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004). Furthermore, <u>Shyrock</u> is fundamentally
7 different from the present case. In <u>Shyrock</u>, the court withheld the jurors' names from counsel (<u>see</u>
8 <u>Shyrock</u>, 342 F.3d at 970), whereas in Petitioner's case, the trial court provided the list of jurors'
9 names to counsel. Therefore, the Court rejects Petitioner's contention that the jurors' believe that they
10 were anonymous deprived Petitioner of a fair trial.

     2.     <u>Right to Participate</u>

12 As an alternative theory, Petitioner relies on <u>Hopt v. Utah</u>, 110 U.S. 574 (1884) in claiming
13 that he was deprived of his right to participate in jury selection insofar as he did not personally see
14 the list of jurors' names. Petitioner does not dispute the fact that he was present with his attorney
15 during jury selection proceedings. Petitioner, however, asserts that even though he was physically
16 present with his attorney, he was not mentally present because he did not know the jurors' names.

17 The Court finds Petitioner's argument unpersuasive. The Supreme Court's <u>Hopt</u> decision does
18 not address the issue before this Court. Instead, the <u>Hopt</u> case relied upon by Petitioner simply stands
19 for the general proposition that "[t]he necessities of the defense may not be met by the presence of
20 counsel only." <u>Hopt</u>, 110 U.S. at 578. In the present case, there is no evidence that the "necessities of
21 the defense" were not met. Instead, the record indicates that counsel specifically asked Petitioner to
22 assist with the jury selection. There is no indication on the record that Petitioner felt hindered by the
23 lack of juror names. Therefore, the Court rejects Petitioner's contention that he was deprived of his
24 right to participate in the jury selection process.

25 B.     <u>Transcript of Jurors' Names</u>

26 Petitioner contends that his due process rights on appeal were violated when the court declined

9

to grant his motion to augment the jury selection transcript with the jurors' names. Respondent, on the other hand, asserts that Petitioner was not entitled to augment the jury selection transcript with the jurors' names because Petitioner did not demonstrate a need for it. Nevertheless, Petitioner contends that the only way he can demonstrate a need for the jurors' names is if he had the jurors' names.

Although there is no due process requirement that states allow direct appeals of criminal convictions, if state law does permit such appeals, due process and equal protection require that indigent criminal defendants be provided with free transcripts for use in the appeal, or other effective means of obtaining adequate appellate review. Britt v. North Carolina, 404 U.S. 226, 227 (1971); Griffin v. Illinois, 351 U.S. 12, 18-20 (1956) (per curium). It is also a violation of equal protection for a state to deny an indigent appellant a transcript for use in the appeal of a post-conviction relief decision when such transcripts could be purchased by those with money to afford them. Long v. Dist. Court of Iowa, 385 U.S. 192, 194-95 (1966) (per curium).

A court need only provide an indigent defendant with "a record of sufficient completeness" to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted. Mayer v. City of Chicago, 404 U.S. 189, 194-95 (1971). Statutes or rules requiring an indigent defendant to show a specific need for an entire trial transcript do not run counter to clearly established federal law. See Boyd v. Newland, 393 F.3d 1008, 1016 (9th Cir. 2004) (California rule requiring an indigent defendant to show a specific need to a complete voir dire transcript does not violate clearly established federal law); see also United States v. MacCollom, 426 U.S. 317, 324-25 (1976) (plurality opinion) (provision of 28 U.S.C.§ 753(f), regarding transcripts for use in cases under 28 U.S.C. § 2255, and requiring judge to certify that case is not frivolous and that transcript is needed before transcript is prepared at government expense, does not violate equal protection or due process).

A Court need only provide an indigent defendant with "a record of sufficient completeness" to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted. See Boyd v. Newland, 393 F.3d 1008, 1016 (9th Cir. 2004). Although the Ninth Circuit Court of Appeals has

10

found constitutional error where a court has failed to provide an indigent defendant with certain parts of trial transcripts on appeal, it has never compelled a state court to provide an entire voir dire transcript. See Boyd, 393 F.3d at 1016. The applicable California appellate rule provides that a motion to augment the reporter's transcript shall establish with some certainty how the requested materials may be useful on appeal. Cal. Ct.App., First App. Dist. Local Rule 6(d).

The Court finds that Petitioner has failed to establish with "some certainty" how the juror names may be useful on appeal. Instead, Petitioner's argument is based upon pure speculation that if he had the list of jurors' names, he might be able to find prejudice and prove how the names may be useful on appeal. Therefore, the Court rejects Petitioner's contention that his Constitutional rights on appeal were violated. For the same reason set forth above, the Court rejects Petitioner's motion for an evidentiary hearing and discovery relating to the jurors' identifications.

C. <u>Ineffective Assistance of Counsel</u>

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. at 686.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must make two separate showings. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687.[2] The defendant must show that counsel's representation fell below an objective standard of reasonableness.

---

[2] A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient. See Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir.), cert. denied, 498 U.S. 960 (1990); see also Rios v. Rocha, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

11

Id. at 688.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689; Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir. 2001) (finding no deficient performance by counsel who did not retain a ballistics expert on a menacing charge where the same expert had been used in the successful defense of the same defendant on a felon-in-possession charge).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  The defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Id. at 688.

1.  Failure to Object to an Anonymous Jury Proceeding

As an alternative to Petitioner's due process and equal protection claims, Petitioner contends that he was deprived of effective assistance of counsel if his counsel failed to object to the "anonymous" jury proceeding.  Respondent, on the other hand, asserts that the error was not prejudicial.

The Court has already concluded above, in section "A," that withholding the jurors' names from Petitioner himself did not violate any Constitutional right.  Therefore, the Court finds that Petitioner's counsel was not deficient in failing to object to the jury selection process.

2.  Failure to Suppress Evidence Seized From Petitioner's Car

Next, Petitioner claims ineffective assistance of counsel based upon his counsel's failure to move to suppress evidence that was obtained from his car.  Respondent asserts that counsel had a tactical reason for not suppressing the evidence, namely because Petitioner had no standing to assert

12

1 any privacy rights to the car. Nevertheless, Petitioner claims he had a privacy interest in the car
2 because he retained ownership of it.

3       An illegal search or seizure violates the federal constitutional rights only of those who have a
4 legitimate expectation of privacy in the invaded place or seized thing. United States v. Salvucci, 448
5 U.S. 83, 91-92 (1980). The law in regards to a reasonable expectation of privacy provides that a
6 claim of ownership in property seized does not necessarily signify a legitimate expectation of privacy,
7 although it is one factor to be considered in the analysis. Rawlings v. Kentucky, 448 U.S. 98, 105
8 (1980). Other factors the Rawlings court considered include: (1) whether the party bringing the
9 suppression motion sought to maintain control over the property; (2) whether the party had a right to
10 exclude others from accessing the property; (3) whether the party took normal precautions to maintain
11 his privacy; and (4) whether the party had a subjective expectation that the property would remain free
12 from governmental intrusion. See Rawlings, 448 U.S. at 105.

13       In our case, Petitioner admits that he sold his car, signaling that he did not seek to maintain
14 control over the car. Furthermore, there is no evidence in the record to demonstrate that Petitioner
15 took any precautions to maintain his privacy interest in the car. Rather, the record indicates that
16 Petitioner's female friend had the car for a couple of days and then loaned it to a Joseph Rodriguez.
17 Under these circumstances, Petitioner's counsel could have reasonably concluded that it would have
18 been futile to bring a motion to suppress predicated upon nothing more than Petitioner's assertion of a
19 privacy right based upon the "conditional sale" of his car.

20       3.    Failure to Move to Suppress Photographs Printed From Seized Film

21       As a related claim, Petitioner contends his trial counsel was ineffective for failing to move to
22 suppress the pictures developed from the roll of film seized from the car. Again, the merits of such a
23 motion to suppress would depend on whether or not Petitioner had a privacy interest in the car. See
24 Salvucci, 448 U.S. at 91-92 (1980). The Court has already concluded that counsel could have
25 reasonably concluded Petitioner had no reasonable expectation of privacy in the car. Therefore,
26 Petitioner's right to effective assistance of counsel was not violated due to any alleged failure to move

United States District Court
For the Northern District of California

13

to suppress the photographs.

### 4. Failure to Oppose Consolidation of Informations

Petitioner's final claim of ineffective assistance of counsel involves his counsel's failure to oppose the prosecution's motion to consolidate the charges against Petitioner into one proceeding. Petitioner's main contentions are: (1) that there is no possible tactical reason for counsel not to oppose the consolidation; and (2) Petitioner was forced to plead guilty to the methamphetamine possession charge.

#### a. Tactical Reasons

The court may reverse on direct appeal due to the ineffectiveness of counsel only where the record "affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." People v. Lucas, 12 Cal.4th 415, 436-437 (1995).

The First District Court of Appeal has determined that there were possible tactical reasons for Petitioner's counsel not to oppose the consolidation. The possible reasons provided by the First District Court of Appeal included: (1) the consolidation may have been necessary to secure the testimony of Melissa Bowden; and (2) the consolidation may have been necessary to avoid placing evidence of the methamphetamine possession before the jury. Petitioner, on the other hand, claims the consolidation was unnecessary because counsel could have secured the testimony without it. Petitioner also argues that the evidence of the methamphetamine was not overwhelming.

In order for the Court to grant habeas corpus relief, however, Petitioner must demonstrate that the First District Court of Appeal's adjudication on the merits resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Because Petitioner is, in essence, claiming that counsel could have secured the testimony in a better way, Petitioner has not demonstrated that the First District Court of Appeal's decision was based on an unreasonable determination of the facts in light of the evidence.

#### b. Forced Plea

Petitioner claims he was forced to plead guilty to the methamphetamine charge because

14

counsel failed to oppose the consolidation of informations. Respondent, in response, asserts that Petitioner was forced to pled guilty because of the overwhelming evidence against Petitioner, and not because of counsel's ineffective representation. Nevertheless, Petitioner claims he did not have to pled guilty because he could have tried and argued that the methamphetamine belonged to others, who were with him, at the time of his arrest.

The First District Court of Appeal has ruled that because Petitioner was arrested with a large amount of methamphetamine in his lap and in his clothing, Petitioner could not have avoided conviction for methamphetamine possession. Petitioner does not dispute the facts in the record indicating that 19 small bags, each containing a gram of methamphetamine, were found in a fanny pack in Petitioner's lap and clothing. Petitioner's sole rebuttal is that he could have attempted to prove that the methamphetamine belonged to someone else. Because Petitioner's contention is speculative, he has failed to rebut the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Thus, the Court finds Petitioner's claim of forced plea to be without merit.

## V.  CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED.

Dated: September 6, 2005   /s/James Ware
04cv3722hc                 JAMES WARE
                           United States District Judge

15

1 **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2 Dane R. Gillette dane.gillette@doj.ca.gov
Peggy S. Ruffra peggy.ruffra@doj.ca.gov
3 Richard Such jsuch@comcast.net

4 **Dated: September 6, 2005**                                **Richard W. Wieking, Clerk**

6                                                             **By:__/s/JW Chambers_____**
                                                              **Ronald L. Davis**
                                                              **Courtroom Deputy**